570 So.2d 104 (1990)
CABIBI AND CABIBI, a Professional Law Corporation
v.
Billy Jean Bertucci, divorced wife of/and Theodore M. HATHEWAY.
No. 90-CA-0235.
Court of Appeal of Louisiana, Fourth Circuit.
October 30, 1990.
Writ Denied January 11, 1991.
*106 James Burnett Aime, New Orleans, for defendant/appellant Billy Jean Bertucci Hatheway.
Charles E. Cabibi, Henrik A. Pontoppidan, Cabibi and Cabibi, New Orleans, for plaintiff/appellee.
Before BYRNES, LOBRANO and WILLIAMS, JJ.
LOBRANO, Judge.
This case comes before us as a consolidated appeal from two judgments in favor of plaintiff-appellee, Cabibi and Cabibi, A Professional Law Corporation (Cabibi) and against defendant-appellant, Billy Jean Bertucci Hatheway (Bertucci).
On April 18, 1989, the trial court granted Cabibi's Motion for Summary Judgment concluding that the obligation for attorney fees was a community obligation.
On June 23, 1989, the trial court dissolved the temporary restraining order previously granted to Bertucci, denied Bertucci's Rule For Preliminary Injunction and allowed Cabibi to proceed with the garnishment of funds in the First National Bank of Commerce belonging to Bertucci and her ex-husband, Theodore M. Hatheway (Hatheway). The garnishment proceedings were pursuant to a default judgment previously rendered against Hatheway for payment of the balance of attorney fees.
The chronology of events leading to this litigation is as follows:
December 14, 1981
Cabibi represented Bertucci and Hatheway, who were married at the time, in the acquisition (via act of sale) of two contiguous pieces of property located at 4900 Paris Avenue and 1555 Mirabeau Avenue, New Orleans, Louisiana. This purchase was for the operation of a Texaco Service Station/Auto repair business called Teddy's Service Center, Inc.
August or September, 1982
The Hatheways were notified by the New Orleans Sewerage and Water Board that their property had a serious subsurface gasoline and oil contamination problem. Various state, federal and local agencies were threatening to close Teddy's Service Center, Inc.
October 2, 1982
Cabibi was hired by Hatheway to protect the Hatheway rights. Hatheway signed a contingency fee contract. Bertucci did not sign the contract.
December 9, 1982
Cabibi filed suit on behalf of Hatheway against Dr. Edward A. John, the previous owner of the property. During the course of the litigation, Mobil Oil Corporation, which previously operated a service station on the property, was brought into the suit by Dr. John under warranty and by Hatheway in tort.[1]
July 16, 1985
Bertucci filed suit for separation and divorce against Hatheway. Attorney Cheryl B. Horton represented Bertucci. Attorney Henrik A. Pontoppidan, an associate of Cabibi represented Hatheway.
March 13, 1986
A judgment of divorce is granted Bertucci and Hatheway. During these proceedings, Pontoppidan withdrew as counsel for Hatheway. Attorney William J. O'Hara enrolled as counsel for Hatheway.
June, 1987
Attorney O'Hara and Attorney William Miles joined Pontoppidan and Cabibi in the litigation against Dr. John and Mobil.
December 11, 1987
Bertucci dismissed Horton as her attorney and retained James Aime. Aime intervened *107 on behalf of Bertucci in the suit against Dr. John and Mobil.
March, 1988
A compromise settlement is reached in the suit against Dr. John and Mobil for the sum of $600,000.00 representing $150,000.00 for Mobil to purchase the property from Hatheway and $450,000.00 for general damages. Bertucci, through counsel participated in the settlement and agreed to the amounts and conditions of the settlement.
April 6, 1988
Bertucci and Hatheway executed a document entitled "Receipt and Release", settling their claims against Dr. John and Mobil. On that day, both Bertucci and Hatheway signed an affidavit authorizing the disbursement of certain funds including $10,641.28 to Cabibi for reimbursement of costs advanced in the suit against Dr. John and Mobil and $120,000.00 in attorney fees. The affidavit stipulated the attorneys fees paid were from Hatheway's portion of the settlement, did not represent the entire fee and was not a waiver to collect the additional fees owed.
June 20, 1988
Bertucci conveyed her interest in the subject property to Mobil Oil in fulfillment of the settlement agreement. The proceeds from the settlement were placed in an escrow fund in First National Bank of Commerce under joint control of O'Hara, attorney for Hatheway in the domestic proceedings and Aime, attorney for Bertucci, pending the settlement of the community between them.
Following the settlement with Mobil, Bertucci refused to release $120,000.00, the balance of the attorney fees asserting that Cabibi's representation of Hatheway in both the Mobil suit and the domestic proceedings constituted a conflict of interest which compromised her interest in the Mobil suit.
August 22, 1988
Cabibi, fearing that the Internal Revenue Service and other creditors of the Hatheways would initiate collection proceedings, filed suit against Bertucci and Hatheway for the balance of the attorney fees. Both parties were served. Bertucci answered the suit. Hatheway failed to answer.
September 17, 1988
A default judgment was taken against Hatheway. This judgment was never appealed and became a final judgment.
December IS, 1988
In response to Bertucci's answer to the suit for attorney fees, Cabibi filed a Motion for Summary Judgment on the issue of whether or not the attorney fees were an obligation of the former community of acquets and gains of the Hatheways.
February 16, 1989
Bertucci filed a Motion to Transfer the suit for attorney fees to the domestic relations court to be combined with the suit to partition the community property. Said motion was denied the same day by Judge Max Tobias. Bertucci did not apply for supervisory writs.
February 17, 1989
The hearing on the motion for summary judgment was held. Following the hearing, the court ordered an additional evidentiary hearing for March 10, 1989 to review the reasonableness of the attorney fees.
March 3, 1989
Bertucci filed a second motion to transfer and consolidate the suit for attorney fees and the suit to partition the community.
March 6, 1989
Domestic relations Judge Robin Giarrusso signed the order transferring the suit.
*108 March 9, 1989
Judge Giarrusso rescinded her March 6, 1989 order to transfer upon learning that Judge Tobias had previously denied a similar motion, had already heard part of the case and issued a partial ruling. No supervisory writs were taken.
April 14, 1989
The evidentiary hearing, originally set for March 10, 1989, on the reasonableness of the attorney fees, was heard. The court found the fees to be legally justified. The court gave Cabibi thirty days within which to add Teddy's Service Center, Inc. as an indispensable party. The judgment was signed on April 18, 1989. Bertucci requested and was granted a suspensive appeal from that judgment.
May 23, 1989
Cabibi was granted a writ of fieri facias pursuant to the default judgment against Hatheway. An order was issued to seize funds in a joint bank account in the names of Bertucci and Hatheway held in the First National Bank of Commerce in an amount sufficient to satisfy the judgment for attorney fees.
June 19, 1989
Bertucci petitioned for and was granted a temporary restraining order to stop execution on the seizure. In addition, Bertucci filed a Rule to Traverse the Answers to the Garnishment Interrogatories.
June 23, 1989
Following a hearing on Bertucci's rules, the trial court concluded that Cabibi had a legal right to seize the funds in the First National Bank of Commerce. The court dissolved the temporary restraining order and denied the petition for preliminary injunction. From this judgment Bertucci requested and was granted a devolutive appeal.
July 5, 1989
The appeals from the April 18, 1989 and June 23, 1989 judgments were consolidated.
In determining that Cabibi's motion for summary judgment was proper and that the obligation for attorney fees was a community obligation, the trial court also concluded that the corporate entity, Teddy's Service Center, Inc., was an indispensable party and ordered its joinder. The court conducted an evidentiary hearing in accordance with Supreme Court guidelines and determined that the $240,000.00 fee was reasonable. However, the court also reserved ruling as to whether any portion of that fee is owed by the corporate entity.
Before this court Bertucci asserts the following assignments of error:
1) The trial court erred in not transferring the case to the domestic relations section to be heard as a community property issue.
2) The trial court erred in hearing this as a summary judgment matter.
3) The trial court erred in finding that Bertucci was bound by the contract signed by Hatheway.
4) The trial court erred in not allowing Bertucci to introduce evidence that Cabibi reduced the attorney's fees as pled in the alternative by Bertucci.
5) The trial court erred in allowing Cabibi to seize funds belonging to Bertucci pursuant to a judgment against Hatheway.

ASSIGNMENT OF ERROR 1:
A review of the record shows that Bertucci filed two motions to transfer this matter to the domestic relations section of the Civil District Court. The first was filed on February 16, 1989 and denied the same day. The second was filed on March 3, 1989, granted on March 6, 1989 and rescinded on March 9, 1989. The trial court decrees denying Bertucci's motions to transfer are not final appealable judgments, but are interlocutory in nature. An interlocutory decree is appealable only where there is a showing of irreparable injury. La.C.C.Pro. art. 2083. We find no *109 irreparable harm in the instant matter. The issues have been fully adjudicated by a district court of competent jurisdiction and we find no reason to vacate its findings on these grounds.

ASSIGNMENT OF ERROR 4:
At the hearing on the reasonableness of the attorney fees, the trial court refused to allow Bertucci to introduce evidence that Cabibi agreed to reduce the amount of fees due and owing. We agree with the trial court's ruling.
Louisiana Code of Evidence Article 408 reads in pertinent part:
"A. Civil cases. In a civil case, evidence of (1) furnishings or offering or promising to furnish, or (2) accepting or offering or promising to accept, anything of value in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This Article does not require the exclusion of any evidence otherwise admissible merely because it is presented in the course of compromise negotiations. This Article also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."
The alleged offer to reduce the attorney fees to $180,000.00 was made in an attempt to resolve the issue of whether or not the settlement funds were community, and was predicated on the condition that the fees would be paid immediately.[2] This offer was obviously rejected by Bertucci. Cabibi then filed the instant suit seeking recovery of his attorney fees as per the employment contract.
The trial court was correct in excluding evidence of this attempted compromise of the fees. The fact that Cabibi may have offered to accept a lesser amount in return for immediate payment was irrelevant to the court's deliberations of Bertucci's obligation under the employment contract, and the reasonableness of any amount owed. It is irrelevant to the issue of whether or not the fee is a community debt. We find no merit in this argument.

ASSIGNMENTS OF ERROR 2 AND 3:
A motion for summary judgment is proper only if the pleadings, depositions and affidavits show there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. Any doubt is resolved against the granting of summary judgment and in favor of a trial on the merits to resolve disputed facts. La.C.C.Pro. art. 966; Thornhill v. Black, Sivalls and Bryson, Inc., 394 So.2d 1189 (La.1981). Only when reasonable minds must inevitably conclude that the mover is entitled to a judgment as a matter of law on the facts is a summary judgment warranted. Chaisson v. Domingue, 372 So.2d 1225 (La.1979). Summary judgment is not to be used as a substitute for a trial on the merits. Brister v. Parish of Jefferson, 393 So.2d 883 (La.App. 4th Cir.1981).
In support of summary judgment, Cabibi submitted the employment contract signed by Hatheway on October 2, 1982.
The employment contract reads:
"I, Teddy Hatheway and Teddy's Service Center, hereby retain, and hire, Henrik A. Pontoppidan and Cabibi and Cabibi, attorney at law, for the purpose of representing me and any interest I may have in the matter of; claims against Dr. John and Mobil Oil Corp. for pollution of property."
It is signed "Theodore M. Hatheway".
It is undisputed that at the time the contract was signed Hatheway and Bertucci were married and a community of acquets and gains existed between them. Any interest of Hatheway in the subject lawsuit on October 3, 1982 was a community *110 interest. Louisiana Civil Code Article 2346 reads as follows:
"Each spouse acting alone may manage, control, or dispose of community property unless otherwise provided by law." (emphasis added)
Bertucci argues at great length that she is not responsible for the attorney fees because she did not give Hatheway permission to sign the contract nor was she asked to actively participate in the litigation. These arguments are irrelevant. Bertucci's knowledge or consent does not affect the validity of the community obligation. Article 2346 clearly states that, unless the law provides otherwise, a spouse acting alone may manage and control community property. It is clear from the record that Hatheway acted as manager of the community business located on the subject property and had done so from the date the property was purchased and the business established.
Furthermore, we reject Bertucci's argument that Civil Code Article 2347 is applicable. That article requires the signatures of both spouses when the alienation, encumbrance or lease of an immovable is involved. The contract with Cabibi was an employment contract for his representation in a lawsuit for damages. Although recission of the sale was an element of the damages sought, we do not consider that fact as requiring the spouse's signature on the employment agreement. Furthermore, when the real property was transferred as part of the settlement with Mobil, Bertucci did sign the act of sale.
When an obligation is incurred for the benefit of the community and the community is enriched or bettered by that obligation, then the community is bound by that obligation. Ledet v. Ledet, 496 So.2d 381 (La.App. 4th Cir.1986); Webb v. Pioneer Bank and Trust Co., 530 So.2d 115 (La.App. 2nd 1988).
Any and all claims against Dr. John and Mobil fell within the ambit of the community of acquets and gains which existed between Hatheway and Bertucci. Bertucci's rights to her community share of the settlement proceeds emanating from the Mobil suit vested when Hatheway signed the contract on behalf of the community. Her petition for intervention was a unilateral action and had no effect on the status of the Mobil suit nor did it serve to change or alter her community rights and obligations relating to the settlement proceeds.
Thus, once it was established that Hatheway and Bertucci were married at the time the contract was signed, that a community of acquets and gains existed between them and that Hatheway signed the contract, no other material facts were germane to this issue.
The trial court correctly granted Cabibi's motion for summary judgment finding that the attorney/client contract signed by Hatheway bound the community between Hatheway and Bertucci and, to the extent that the community benefitted from the settlement, the attorney fees are a community debt.
These assignments of error are without merit.

ASSIGNMENT OF ERROR 5:
On September 14, 1988, Cabibi obtained a final judgment against Hatheway for the balance of the attorney fees in the amount of $120,000.00. Fearing action by other creditors, Cabibi exercised its rights to execute on the judgment. Cabibi obtained a writ of fieri facias and seizure was issued to First National Bank of Commerce on a joint account in the name of Hatheway and Bertucci. The funds on deposit in that account were proceeds from the $600,000.00 settlement which belonged to the community of acquets and gains. Bertucci asserts it was error for the trial court to dissolve the temporary restraining order and allow the seizure to proceed since no final judgment against her had been rendered. We disagree.
Louisiana Civil Code Article 2357 reads in pertinent part:
"An obligation incurred by a spouse before or during the community property regime, may be satisfied after termination of the regime from the property of the former community and from the *111 separate property of the spouse who incurred the obligation." (emphasis added)
Cabibi had a judgment for the balance of the fees. He had the right to seize the funds in the joint account to satisfy that community obligation. Even assuming arguendo that the debt was a separate obligation of Hatheway, Cabibi, as a third party creditor, would have had the right to seize assets of the former community in satisfaction of that debt. La.C.C. art. 2357; See also, La.C.C. art. 2364.
This assignment of error is without merit.
For the foregoing reasons, the judgment of the trial court is affirmed. However, because the trial court ordered Cabibi to join the corporate entity, Teddy's Service Center, Inc. as a party defendant, it is necessary to remand this matter for a determination of whether any portion of the attorney fees are owed by them. All costs of this appeal to be paid by Bertucci.
AFFIRMED and REMANDED.
NOTES
[1] This suit bears CDC #82-19155. The relief sought by Hatheway was for rescission of the sale of the property, economic damages, mental anguish and personal injury.
[2] There is no dispute at this time concerning the status of the settlement funds since appellees have admitted they are community.