193 P.3d 802

**ARAB MONETARY FUND, Plaintiff/Appellee,**

v.

**Jafar HASHIM and Maryam Hashim, husband and wife, Defendants/Appellants.**

**No. 1 CA–CV 07–0550.**

Court of Appeals of Arizona, Division 1, Department E.

Aug. 12, 2008.

---

Snell & Wilmer, LLP By Donald L. Gaffney, Steven D. Jerome, Andrew A. Harnisch, Phoenix, Attorneys for Plaintiff/Appellee.

Osborn Maledon, PA By Warren J. Stapleton, Phoenix, Attorneys for Defendants/Appellants.

## OPINION

PORTLEY, Judge.

¶ 1 We are asked to decide whether plaintiff-appellee Arab Monetary Fund (the "AMF") can collect the English judgment for litigation costs against appellant Jafar Hashim ("Hashim") from the community property of Hashim and his spouse, Maryam Salass. Because we find that Hashim's liability was incurred before he was married and the community cannot be responsible for the premarital obligation, we reverse the summary judgment and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Hashim's father, Dr. Jawad Hashim ("Dr. Hashim"), was the first President and Director General of the AMF from 1977 to 1982. *In re Hashim,* 213 F.3d 1169, 1170 (9th Cir.2000). The AMF subsequently discovered that Dr. Hashim had embezzled funds during his tenure, and he was convicted in *absentia* in the United Arab Emirates of breach of trust, embezzlement and forgery. *Id.*

¶ 3 The AMF initiated civil actions in December 1988 in England and Canada to recover the embezzled funds. The AMF secured an injunction in 1989 in a Canadian court which restrained Hashim from disposing of two pieces of real property[1] and cash he had received from his father and mother, Salwa Hashim.[2]

---

1. Dr. Hashim purchased a condominium called Suite 801 in Hashim's name in 1983, and the transfer to Hashim was completed in September 1984. Dr. and Mrs. Hashim purchased the Uxbridge Farm in 1985 and transferred it to their son for a nominal fee in 1986.

2. Hashim received $90,000 from his mother in December 1988.

¶ 4 Hashim married Maryam in Canada on July 14, 1989. They moved to Arizona in December 1991.

¶ 5 The AMF secured a $50 million judgment against Dr. Hashim in July 1994 in the English proceeding. *Id.* The Chancery Division of the English High Court of Justice also found that Hashim and his brother, Omar, were wrongful recipients of property and cash traceable to the AMF funds and, as a result, were constructive trustees. Hashim was directed to transfer the properties to the AMF and to account for any rents or profits earned or loans against the properties. The English judgment also held Hashim jointly and severally liable for the AMF's attorneys' fees and costs, but did not establish an amount.

¶ 6 The AMF domesticated the English judgment in the Maricopa County Superior Court in September 1994. Hashim and other family members filed for bankruptcy protection. The AMF filed proofs of claim which anticipated that the English court could award it more than $10 million in fees and costs. The family members successfully objected to the AMF's claims. *Id.* at 1171. The AMF appealed the ruling.

■ ¶ 7 While the appeal was pending, the AMF initiated proceedings in England to recover its fees and costs from the English proceedings.[3] Hashim did not timely respond to the AMF's requested amount, and a default costs certificate was issued on August 23, 1999, for $959,763.

¶ 8 The Ninth Circuit Court of Appeals subsequently reversed the bankruptcy court's ruling disallowing the claim. *In re Hashim*, 213 F.3d at 1172–73. On remand, the bankruptcy court granted the AMF's motion to amend its claims to add the English costs judgment in February 2001. Some two years later, the bankruptcy court denied Hashim's request for discharge because he knowingly made numerous misrepresentations and omissions regarding material matters and his conduct demonstrated a pattern of intentional deceit.

¶ 9 The AMF then filed this action in Maricopa County Superior Court against Hashim and his spouse on April 24, 2003, to domesticate the default costs certificate in the amended amount of $730,182.97. An amended complaint filed in June 2004 asserted three counts: Count I sought recovery of the judgment against the marital community pursuant to Arizona Revised Statutes ("A.R.S.") section 25–215(C) (2007), Count II sought recovery against Hashim individually, and Count III sought recovery against the marital community to the extent of any contributions by Hashim pursuant to A.R.S. § 25–215(B).

¶ 10 The trial court, in September 2005, granted the AMF partial summary judgment on Count II, and held Hashim liable in his individual capacity for the full amount of the costs judgment. We subsequently affirmed that ruling.

¶ 11 The AMF then filed a motion for partial summary judgment on Count I on December 22, 2006. The AMF argued that the marital community was liable for the litigation costs in the English proceedings because the judgment in those proceedings was rendered in July 1994, well after the Hashims' 1989 marriage and because the litigation costs were overwhelmingly incurred while the couple was married.

¶ 12 The Hashims responded that the obligation was a premarital debt because the conduct that was the subject of the English proceedings—Hashim's receipt of property and money derived from the misappropriated funds—occurred prior to the marriage. They also asserted that the AMF could not show that Hashim's defense of the English proceedings benefited the marital community because Hashim received the property prior to his marriage, which would make it and any resulting benefit his separate property.

¶ 13 The AMF countered and argued that the Hashims' marital community benefited from the misappropriated property, noting that the Hashims claimed that they had used Suite 801 and Uxbridge Farm as security on

---

**3.** Under the English rule, the loser pays the costs, including attorneys' fees, of the prevailing party. *See Schweiger v. China Doll Rest., Inc.,* 138 Ariz. 183, 186, 673 P.2d 927, 930 (App. 1983).

loans, the proceeds of which were used for community purposes. The AMF expressed the belief that the loans were shams intended to prevent the AMF from recovering the property, but argued that the Hashims were judicially estopped from denying Hashim's prior statements that they had received the loans and used them for the community. The AMF also argued that a substantial portion of the funds from a business entity, JHH, were used for community purposes. According to the AMF, by litigating the English proceedings, Hashim provided time for the marital community to consume the misappropriated property.

¶ 14 In turn, the Hashims argued that the AMF was judicially and collaterally estopped from claiming that the loans were valid for purposes of showing a benefit to the marital community because it had previously argued that the loans secured by the Suite 801 and Uxbridge Farm properties were shams.

¶ 15 After oral argument, the trial court did not expressly address the question of whether the costs judgment was a premarital or postmarital obligation. The court implicitly found that it was a postmarital obligation, however, because it found that the defense of the English action benefited the marital community, which would have been unnecessary had the court concluded that the costs judgment was a premarital debt.[4] The court declared the litigation costs to be a community debt. The court granted the AMF's motion for partial summary judgment and entered judgment accordingly. The Hashims timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 16 Summary judgment may be granted when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). We determine *de novo* whether any genuine issues of material

fact exist and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson,* 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000).

¶ 17 The parties agree that a debt is incurred at the time of the actions that give rise to the debt. *See Flexmaster Aluminum Awning Co. v. Hirschberg,* 173 Ariz. 83, 85, 839 P.2d 1128, 1130 (App.1992) (finding that husband's purchase of goods prior to marriage represented premarital debt); *McKee v. Conkle,* 23 Ariz.App. 249, 250, 532 P.2d 191, 192 (1975) (holding that postmarital judgment arising out of premarital acts represents premarital debt). A premarital debt of one spouse can be recovered from community property, but only to the extent of the value of the debtor spouse's contribution to the community. A.R.S. § 25–215(B). A debt incurred during a marriage for the benefit of the marital community is presumed to be a community obligation unless clear and convincing evidence exists to the contrary. *United Bank of Ariz. v. Allyn,* 167 Ariz. 191, 198, 805 P.2d 1012, 1019 (App.1990).

¶ 18 Hashim argues that the costs judgment represents his premarital debt because the underlying conduct that was the basis for his inclusion in the litigation—his receipt of two pieces of real property and cash whose source was the funds misappropriated by his father—occurred prior to his marriage and the AMF's attempt to recover the embezzled funds. He argues that the trial court erred in concluding that their entire marital community was liable for the debt.

¶ 19 The AMF argues that the conduct giving rise to the costs judgment was Hashim's participation in the litigation, which, for the most part, occurred after their marriage. It contends that the costs judgment was therefore an obligation of the entire community as found by the trial court.

¶ 20 The Hashims and the AMF cite the same several cases in support of their positions.[5] These cases support the position that

---

4. By statute, "either *spouse* may contract debts and otherwise act for the benefit of the community." A.R.S. § 25–215(D) (emphasis added). The benefit to the community is not a factor in determining community liability for a premarital separate debt. *See* A.R.S. § 25–215(B).

5. The parties cite *Barnes v. Vozack,* 113 Ariz. 269, 550 P.2d 1070 (1976), *Alberta Sec. Comm'n v. Ryckman,* 200 Ariz. 540, 30 P.3d 121 (App.2001), and *Flexmaster,* 173 Ariz. 83, 839 P.2d 1128.

the marital status at the time of the activities that give rise to a debt determines to what extent the marital community is liable for a debt incurred by one spouse. The cases are not helpful, however, in resolving the issue actually in dispute: whether Hashim's premarital receipt of the property, which was the basis of the underlying litigation, or Hashim's defense of the AMF's claim was the activity that gave rise to the debt. Neither party has cited nor have we found any cases addressing whether litigation costs can be separated from an underlying action such that a marital community can be held liable for postmarital litigation costs incurred in defense of a lawsuit based on the premarital conduct of one spouse.

¶ 21 We agree with the Hashims that treating the litigation costs resulting from defense of a claim arising out of premarital acts as a postmarital obligation would be inconsistent with the statutory scheme establishing limits on community liability for premarital debt. By statute, liability of a marital community for premarital debts is limited to the debtor spouse's contribution to the community. A.R.S. § 25–215(B). Treating the costs imposed for defending premarital conduct as a separate postmarital debt would expand the liability of the community for premarital activities beyond that authorized by statute. It would also have the unfortunate consequence of forcing a person faced with litigation for a premarital act to refrain from marrying if not yet married, refrain from mounting a defense even if the defense was meritorious, or put at risk the marital assets of his or her spouse who was otherwise not liable for those premarital acts.

¶ 22 The AMF argues that the litigation costs cannot relate back to Hashim's receipt of the properties because the AMF was unsuccessful in proving liability on that basis. The AMF states that had it proved monetary liability, then the cost award would have related back to the receipt of the property and would have been a premarital debt. Because it could not prove liability, the AMF continues, the cost judgment "relates *solely* to Jafar's post-marital attempt to keep the Misappropriated Properties," which makes it a postmarital debt for which the entire com-

munity is liable. The AMF offers no authority that the litigation can be segregated in such a way for such a purpose, and we reject the idea here.

¶ 23 The AMF received an award of attorneys' fees from the English court because it was able to demonstrate, in part, that Hashim had received property originating from the *misappropriated AMF funds*. Regardless of whether the AMF was able to prove monetary liability against Hashim, AMF incurred expenses trying to recover and protect its interests in the Canadian properties Hashim received from his parents before he was married. If Hashim had not received those properties, the AMF would have had no claim against him and could not have incurred or charged him with litigation costs. Moreover, even Hashim's "post-marital attempt to keep the Misappropriated Properties," which the AMF contends forms the basis for the cost award, necessarily is tied to his defense of the claim that he wrongfully received those properties. The attorneys' fees awarded to the AMF and now imposed on Hashim are therefore inextricably linked to his receipt of the property.

¶ 24 Because the obligation to pay attorneys' fees arises out of Hashim's receipt of the property and because he received all of the property in question prior to his marriage, the conduct giving rise to the debt occurred prior to his marriage. The costs judgment is therefore a premarital obligation and its collection against the Hashims' marital community is limited in accordance with A.R.S. § 25–215(B).

¶ 25 Because we find that the costs judgment is a premarital obligation, we do not address the Hashims' arguments that their marital community did not benefit from his retention of the properties.

## CONCLUSION

¶ 26 We find that the costs judgment is a premarital debt. We therefore reverse the trial court's decision finding it to be an obligation of the entire community, and remand for further proceedings.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, and PATRICIA K. NORRIS, Judge.

