865 P.2d 110

**Sandra K. HEINIG, Plaintiff–Appellant, Cross Appellee,**

**v.**

**George HUDMAN and Cheryl Fisher Hudman, husband and wife, Defendants–Appellees, Cross Appellants.**

**No. 1 CA–CV 90–207.**

Court of Appeals of Arizona, Division 1, Department B.

May 27, 1993.

Review Denied Jan. 19, 1994.

Dioguardi, Poli & Ball, Ltd. by Michael N. Poli and N. Mark Kramoltz, Phoenix, for plaintiff-appellant, cross appellee.

Treon, Strick, Lucia & Aguirre, P.A. by Gerald J. Strick and Scott F. Frerichs, Phoenix, for defendant-appellee, cross appellant George Hudman.

Goldstein, Kingsley & McGroder, Ltd. by Philip T. Goldstein and Pamela L. Kingsley, Phoenix, for defendant-appellee, cross appellant Cheryl Fisher Hudman.

**OPINION**

LANKFORD, Judge.

Plaintiff Sandra K. Heinig appeals from a summary judgment granted in favor of defendants George Hudman and Cheryl Fisher Hudman. We reverse in part and affirm in part.

The parties raise numerous issues which we summarize as follows:

1.  Does the doctrine of res judicata bar Heinig's action?

2.  Does Heinig have a fraudulent conveyance claim against the Hudmans' marital community when she is a judgment

creditor only of Mr. Hudman individually?

On review of summary judgment, we view the evidence in a light most favorable to the party against whom summary judgment was granted and draw all reasonable inferences in favor of that party. *United Bank of Ariz. v. Allyn,* 167 Ariz. 191, 193, 195, 805 P.2d 1012, 1014, 1016 (App.1990). Summary judgment was granted against the plaintiff, Heinig, and we view the record accordingly.

The facts are as follows. Heinig, George Hudman, and a third person[1] entered into a partnership agreement to develop raw land owned by Heinig. George Hudman represented both orally and on the face of the partnership agreement that he was a married man dealing with his sole and separate property. The agreement also contained a provision requiring that disputes among the partners would be subject to arbitration.

Subsequently, George Hudman purchased the interest held by the third partner. He then attempted to use the unanimity requirement in the partnership agreement to inhibit financing until he could buy out Heinig's interest at terms favorable to him. The real estate market deteriorated, the project became less viable, and a lender initiated a trustee's sale on the property.

Heinig then initiated arbitration proceedings against George Hudman under the arbitration provision of the partnership agreement. Heinig and Hudman asserted claims against each other in the arbitration.

Heinig learned from George Hudman's testimony in the arbitration hearing that, contrary to Mr. Hudman's prior oral and written statements that he was a married man dealing with his sole and separate property, he had acquired his partnership interest with funds obtained through a line of credit on which both he and his wife, Cheryl Hudman, were obligors. The line of credit was secured by a mortgage on real property which the record suggests is an asset of their marital community.

Following George Hudman's testimony in the arbitration proceeding, Heinig moved to join Cheryl Hudman as a party to the arbitration so that any resulting judgment would be paid from the Hudmans' community assets. George Hudman opposed that motion, arguing:

The clear, written agreement between the parties does not give the arbitrator the authority to determine any claims against Cheryl Hudman....

. Since Mrs. Hudman cannot be forced to be a party to this arbitration, no claim against the community property of George and Cheryl Hudman can be asserted here. Ariz.Rev.Stat. (A.R.S.) § 25–215(d) [sic] makes both spouses necessary parties to any claim against community property. *Eng v. Stein,* 599 P.2d 796, 798, 231 Ariz. 343 [sic] (1979).

The arbitrator declined to join Mrs. Hudman. The arbitrator and plaintiff's counsel discussed the significance of that ruling:

THE ARBITRATOR: I understand the issues of community property and the enforceability of judgments and all of those good things, and I would suggest to the claimant that if you are successful in this action to any extent and you want to go after the community interests of Mr. and Mrs. Hudman, do it by separate action. I'm not saying I'm leaning one way or the other, but if, in fact, that happens I think you have avenues of redress but—

MR. POLI [counsel for plaintiff]: You are not expressing any decision on the merits of that?

THE ARBITRATOR: No decision on the merits, and if you want to bring in evidence the fact [sic] that you were somehow defrauded by representations of the community or sole and separate, that is fine, but I think the claimant's beef is with Mr. Hudman, and I will adjudicate that beef only. I think any claim or attempt to bring Mrs. Hudman into the action is merely for enforceability of a judgment ... But I don't think this is Mrs. Hudman's fight. So for that reason I will deny your claim to admit her as a party to this action.

---

1. This person is not a party to this action.

MR. POLI: So I'm clear on the denial, this is not a resolution on the merits and is no prejudice to our ability to claim—

THE ARBITRATOR: You guys can do whatever you want after this is over. I'm going to resolve the dispute only with respect to the parties to the partnership ...

MR. POLI: The only thing concerning me is in the event that we get a verdict in our favor and we go to what perhaps will be the next step, which is some sort of, you know, RICO claim perhaps against the marital community or some other fraud claim against the marital community, that you are not rendering any decision that would have res judicata effect.

THE ARBITRATOR: I would hope so. I am making no adjudication as to whether or not this was Mr. Hudman's sole and separate property or his community property or whatever.... [T]he only reason to bring in the community property issue, as far as I am concerned, would be enforceability and collectability, and I'm going to leave that to you guys. I just don't see that as being within my province with what we have on the table here. But I guess the roundabout answer to your question is no, I'm not going to rule one way or the other whether it was sole and separate property or community property, and frankly don't necessarily want to get into it.

The arbitrator eventually decided some of the claims in favor of each party. He determined that George Hudman had breached both the contract and the fiduciary duty he owed to his partners. The arbitrator entered an award for Heinig against George Hudman in the amount of $195,000, but denied both Heinig's racketeering claim and her punitive damages claim. On the other hand, the arbitrator found in favor of George Hudman's claim against Heinig for negligent misrepresentation and awarded $30,000 to Hudman. The arbitrator offset the two awards and entered a net award in favor of Heinig in the amount of $165,000.

Heinig then applied to the superior court to have the arbitration award confirmed. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–1511 (1982). The court entered a money judg-ment against George Hudman for $165,000, which was not appealed and became final.

Heinig next filed the present action in superior court. She sought declaratory relief that the judgment against George Hudman was enforceable against the Hudmans' marital community. She also raised fraudulent conveyance and racketeering claims against Mr. and Mrs. Hudman.

The superior court granted summary judgment in favor of Mr. and Mrs. Hudman on every claim. The court held that the doctrine of res judicata barred Heinig from raising claims which had already been litigated in arbitration.

Our decision reverses the superior court's ruling. Heinig is not barred from pursuing claims against Mrs. Hudman in this action because Heinig did not have a prior opportunity to assert those claims in the arbitration. Moreover, the fraudulent conveyance and/or racketeering claims are not barred because they differ from the claims asserted in the arbitration proceeding.

## I.

We first consider whether the superior court properly granted summary judgment against Heinig's claim for declaratory relief. She had requested a declaratory judgment that the community assets of George and Cheryl Hudman are subject to satisfy the prior money judgment, which named only George Hudman. In other words, Heinig sought to convert the judgment on the arbitration award against one spouse into a judgment enforceable against both spouses and the assets of their marital community. In response, George and Cheryl Hudman raised the defense of res judicata.

The trial court incorrectly entered summary judgment against the declaratory relief claim. Res judicata is no defense because Heinig had no opportunity in the arbitration proceeding to assert her claims against Cheryl Hudman. The arbitration proceeded against Mr. Hudman in his capacity as a married man dealing with his separate property, and resulted in an arbitration award and judgment against him alone. The parties correctly assume that this judgment did

not bind the marital community. *See* A.R.S. § 25–215(D) (1991); *Flexmaster Aluminum Awning Co. v. Hirschberg*, 173 Ariz. 83, 88, 839 P.2d 1128, 1133 (App.1992). Thus, the community liability of Mr. and Mrs. Hudman remains an open question.

■ However, the judgment against George Hudman cannot be converted into one against both George and Cheryl Hudman without regard for Mrs. Hudman's right to procedural due process. As Article 2, Section 4 of the Arizona Constitution provides, "No person shall be deprived of life, liberty, or property without due process of law." *See also* U.S. Const. amend. XIV ("nor shall any State deprive any person of life, liberty, or property, without due process of law …"). Under the Arizona and federal constitutions, Cheryl Hudman must have an opportunity to be heard at a meaningful time and in a meaningful manner before governmental power can be employed to deprive her of property. *See Morrison v. Shanwick Int'l Corp.*, 167 Ariz. 39, 42, 804 P.2d 768, 771 (App.1990). The claim against her husband was decided in an arbitration to which Cheryl Hudman was not a party.

Thus, Mrs. Hudman has not yet had the opportunity to defend Heinig's claims. We cannot agree with Heinig's argument that it was enough that Cheryl Hudman sat through the arbitration hearing or that she may have assisted in presenting George Hudman's case. The record is clear that she was never a party to the arbitration. The arbitrator decided no claims against her, and she cannot now be held automatically liable for the resulting money judgment entered against George Hudman only.

■ The existing judgment against Mr. Hudman can be executed only against his separate property, not the Hudmans' community property. Community property generally cannot be reached to satisfy a judgment against only one spouse. *See Schilling v. Embree*, 118 Ariz. 236, 575 P.2d 1262 (App.

1977).[2] Heinig's judgment against George Hudman's separate property cannot be executed against the Hudmans' community property.

■ Although Heinig can neither collect the judgment out of community property nor obtain a declaration based on the judgment alone that the marital community is liable for it, she is not necessarily precluded from holding the community liable under any and all circumstances. We see no reason why Heinig may not collect against the Hudmans' community property if she proves that the community is in fact liable.

Because Cheryl Hudman was not a party to the arbitration, Heinig may not collect against the Hudman community property based on A.R.S. section 25–215(D). As long as both spouses have an opportunity to litigate community liability issues, and Cheryl Hudman has an opportunity to litigate the underlying liability which the arbitration denied against her husband, due process is satisfied. *Cf. Flexmaster Aluminum Co. v. Hirschberg*, 173 Ariz. at 88, 839 P.2d at 1133, ("The wife's interest in community property includes a due process right to litigate both the premarital debt and the value of the husband's contribution to the marital community.") We emphasize that Heinig cannot add Mrs. Hudman as a party liable on the judgment merely by a summary post-judgment declaratory action converting the judgment automatically from one against one spouse into one against both spouses.

In *Spudnuts, Inc. v. Lane*, 139 Ariz. 35, 676 P.2d 669 (App.1984), the judgment creditor persuaded the trial court to amend a final judgment against a husband by adding the wife as a defendant and judgment debtor. We held that the wife's due process right to answer the claim against her was violated by adding her as a defendant in post-judgment proceedings.

Although a creditor cannot summarily convert a separate judgment into one against

---

**2.** *But see* A.R.S. § 25–215(B) (1991): "The community property is liable for the premarital separate debts or other liabilities of a spouse, incurred after September 1, 1973 but only to the extent of the value of that spouse's contribution to the community property which would have

been such spouse's separate property if single." In such a case, however, the non-debtor spouse has a right to be heard before being subjected to liability. *Flexmaster Aluminum Co. v. Hirschberg*, 173 Ariz. at 88–89, 839 P.2d at 1133–34.

the community, we see no reason to permit the community to escape liability merely because the arbitrator refused to consider the matter of community liability. The arbitration proceeding did not determine that the community bore no liability, and indeed the arbitrator reserved that issue for another day. If the spouses are sued in a subsequent action and given a full opportunity to contest the community's liability, and the spouse who is not the judgment creditor is allowed to litigate the claims decided in the prior judgment, due process is no bar to such a proceeding.[3] Under the circumstances presented here, we hold that an independent action may be brought to establish the liability of the spouse who could not have been joined in the first action.

In the later action Mrs. Hudman must be given the opportunity to litigate the existence of liability, the amount of damages, and the nature of the liability as a separate or community obligation. While such an action is one for damages rather than declaratory relief, Heinig may amend her complaint in this action to state the proper claim.

## II.

■ The next issue is whether the res judicata effect of the prior judgment bars Heinig's claims in this action. Res judicata has been defined as follows:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

Restatement (Second) of Judgments § 24(1) (1982). A valid final judgment is also conclusive as to every issue decided and every issue raised by the record that could have been decided. *Day v. Wiswall's Estate*, 93 Ariz. 400, 402, 381 P.2d 217, 219 (1963); *Fraternal*

*Order of Police v. Superior Ct.*, 122 Ariz. 563, 565, 596 P.2d 701, 703 (1979).

■ We first consider whether the existence of a judgment confirming the arbitration award bars any claims in this action against the marital community.

The rule of preclusion has its exceptions, two of which apply here:

(1) When any of the following circumstances exists, the general rule of [res judicata] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

.     .     .     .     .

(b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or

(c) The plaintiff was unable ... to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; ...

Restatement (Second) of Judgments § 26(1) (1982).

We hold that Heinig's claims against the community property of George and Cheryl Hudman qualify under both of these exceptions to the general res judicata rule.

The exception described in Restatement section 26(1)(b) applies when a court expressly reserves the plaintiff's right to bring a second action. In this case, the arbitrator reserved the issue of community liability for another action and another forum. The arbitrator stated, "I would suggest to the claimant that if you are successful in this action to any extent and you want to go after the community interests of Mr. and Mrs. Hudman, do it by separate action." Responding

---

**3.** Moreover, because Mrs. Hudman could not have been sued in the prior proceeding—because she was not a party to the arbitration agreement and because the arbitrator would not permit her joinder—A.R.S. section 25–215(D) does not apply. While that statute ordinarily requires the joinder of both spouses to create community liability, the statute does not require the impossible.

to Heinig's counsel, who, in an attempt to clarify the reservation by the arbitrator, stated, "So I'm clear on the denial, this is not a resolution on the merits and is no prejudice to our ability to claim—," the arbitrator stated: "You guys can do whatever you want after this is over. I'm going to resolve the dispute only with respect to the parties to the partnership...."

Heinig's counsel then specifically mentioned res judicata:

> The only thing concerning me is in the event that we get a verdict in our favor and we go to what perhaps will be the next step, which is some sort of, you know, RICO claim perhaps against the marital community or some other fraud claim against the marital community, that you are not rendering any decision that would have res judicata effect.

The arbitrator responded in the affirmative. The arbitrator clearly refused to consider claims against Mrs. Hudman in the arbitration and reserved resolution of the community liability issues for another action and another forum.

The other exception to the res judicata rule, described in Restatement section 26(1)(c), allows a claim when the plaintiff was prevented from seeking relief in the first action because of the limited subject matter jurisdiction of the court. This exception applies because the arbitrator lacked subject matter jurisdiction to decide claims against Mrs. Hudman.

■ The subject matter jurisdiction of an arbitrator is limited in scope to issues raised by the arbitration agreement. *Clarke v. AS-ARCO, Inc.*, 123 Ariz. 587, 589, 601 P.2d 587, 589 (1979). The issue of community liability was outside the scope of the arbitration because Cheryl Hudman was not bound by the arbitration. She was neither a party to the arbitration agreement nor to the arbitration proceeding. In *Able Distrib. v. James Lampe*, 160 Ariz. 399, 773 P.2d 504 (App. 1989), this court held that a non-party garnishing creditor was not bound by an arbitration agreement between the garnishee and the judgment debtor. 160 Ariz. at 410, 773 P.2d at 515. The court stated that A.R.S. section 12–1501, which upholds the validity of

arbitration agreements, "binds only the parties to the arbitration agreement, and is therefore inapplicable to non-parties ..." *Id.*

Heinig and George Hudman were parties to the arbitration agreement; Cheryl Hudman was not. If the arbitrator were to have considered and ruled on community liability without her consent to submit to arbitration, he would have exceeded his authority. Res judicata does not preclude Heinig from litigating claims against Mr. and Mrs. Hudman's community property which could not have been litigated in the arbitration.

In summary, Heinig's claims against the community are not barred by res judicata principles for two reasons: (1) the arbitrator reserved the issue, and (2) the matter was outside the scope of arbitration. Accordingly, we need not reach Heinig's other arguments as to why res judicata does not apply.

The Hudmans nevertheless argue that *C & J Travel, Inc. v. Shumway,* 161 Ariz. 33, 775 P.2d 1097 (App.1989) allows the res judicata defense on these facts. In *Shumway*, the plaintiff, C & J Travel, sought to enforce against the marital community a foreign judgment it had obtained in another state against the defendant's husband. We held that res judicata precluded a second action in Arizona against the husband.

*Shumway* is readily distinguishable from this case. As we noted in our opinion, no procedural impediment prevented joinder of the wife in *Shumway*. 161 Ariz. at 36, 775 P.2d at 1100. In contrast, Heinig attempted to join Cheryl Hudman in the arbitration proceeding and could not do so. In addition, the community liability issue was outside the scope of the arbitration proceeding. Thus, exceptions to res judicata which apply in this case did not apply in *Shumway*.

A related line of cases also offers no support to the Hudmans' position. In *Spudnuts, Inc. v. Lane*, 139 Ariz. 35, 676 P.2d 669 (App.1984), the court held that judgment against a spouse who was not served and whose liability was not determined would be a due process violation. Similarly, the court in *Eng v. Stein*, 123 Ariz. 343, 599 P.2d 796

(1979), held that a judgment was improperly entered against a husband and wife when only the husband had been named as a defendant. Finally, in *Vikse v. Johnson*, 137 Ariz. 528, 672 P.2d 193 (App.1983), the court held that a foreign state's judgment against a husband only could not be enforced in Arizona against the marital community when neither the spouse nor the community had been served in the state in which the judgment was entered. None of these cases held that a subsequent action against the marital community is barred when one spouse could not be joined in the initial action.

Cheryl Hudman also asserts on appeal that Heinig is barred from pursuing this action because instead of filing this independent action she should have either: (1) objected to the arbitration award in the confirmation process to avoid a final judgment, or (2) moved to stay the arbitration and requested appropriate relief from the superior court to void the arbitration agreement and/or resolve the community liability issue. George Hudman argues that Heinig should have either: (1) filed a separate lawsuit to have the arbitration clause declared void, or (2) appealed the confirmation award. Heinig's failure to follow any of these courses of action, the Hudmans contend, bars her present action.

■ Heinig could not have opposed the arbitration award during the confirmation proceedings. The superior court's jurisdiction in a confirmation proceeding is limited to considering opposition on statutorily enumerated grounds, A.R.S. section 12–1512, and to confirming or rejecting the arbitration award. *Ariz. Pub. Service Co. v. Mountain States Tel. & Tel. Co.*, 149 Ariz. 239, 244, 717 P.2d 918, 923 (App.1985). Heinig lacked the statutory grounds to attack the award.

Moreover, Heinig's objections could not have succeeded. Cheryl Hudman was not a party to the agreement to arbitrate the claims between Heinig and George Hudman. The question of community property liability for the claims against George Hudman was outside the scope of the agreement and outside the scope of the arbitration proceeding.

Although Heinig could not have successfully opposed the arbitration award in the confirmation proceedings, she could have requested a stay of the arbitration. While Arizona law and public policy have long favored arbitration, *Einhorn v. Valley Medical Specialists*, 172 Ariz. 571, 838 P.2d 1332 (App.1992), the preference for arbitration presupposes a valid arbitration agreement between or among the parties. *Stevens/Leinweber/Sullens v. Holm Dev.*, 165 Ariz. 25, 30, 795 P.2d 1308, 1313 (App.1990). Arizona has adopted legislation relating to the enforceability of arbitration provisions in A.R.S. sections 12–1501 and 12–1502 (1982). A.R.S. section 12–1501 provides that:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

In the event of a refusal to arbitrate or disagreement regarding the existence of an arbitration agreement, A.R.S. section 12–1502 provides that:

A. On application of a party showing an agreement [to arbitrate] ..., and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party. Otherwise, the application shall be denied.

B. On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

⸱　⸱　⸱　⸱　⸱

To avoid arbitration, Heinig would have had to prove that the arbitration provision itself was unenforceable because grounds "in law or in equity for the revocation of any

contract" existed. *Cf. U.S. Insulation, Inc. v. Hilro Const. Co.*, 146 Ariz. 250, 256, 705 P.2d 490, 496 (App.1985) (to successfully challenge a motion to compel arbitration requires evidence either that (1) with regard to the arbitration provision itself, grounds exist "in law or in equity for the revocation of any contract" or (2) the arbitration clause was repudiated, resulting in waiver). To render the arbitration provision unenforceable, Heinig would have had to show that the arbitration clause itself was invalid as void or voidable because of fraud in the inducement resulting from George Hudman's representation as to his status as a married man, dealing with his sole and separate property. If Heinig had sustained this burden of proof, she would have been entitled to a stay order pursuant to A.R.S. section 12–1502(B).

■ We therefore must determine whether Heinig's failure to seek a stay of the proceedings that led to the first judgment bars this action. We hold that her inaction is not a bar. Once the arbitrator refused to consider the issue of community liability, Heinig was entitled to rely on his ruling. Heinig had agreed to submit to arbitration and was not required to attack the validity of the arbitration agreement or any of the arbitrator's rulings through a stay application.

■ We next consider whether Heinig's claims in this action are barred, at least as against George Hudman, because they are the same claims decided in the arbitration. If the present claims are distinct and separate from those raised in the arbitration proceeding, they are not precluded:

> For a prior suit to be res judicata, the same issues must be decided therein which were raised in the second cause. Only such matters are adjudicated in a former judgment which appear upon its face to have been adjudicated or which were actually and necessarily included therein or necessary thereto. Rights, claims, or demands—even though they grow out of the same subject matter—which constitute separate or distinct causes of action not appearing in the former litigation, are not barred in the latter action because of res judicata. (Citations omitted).

*Rousselle v. Jewett*, 101 Ariz. 510, 512, 421 P.2d 529, 531 (1966).

Heinig's original demand for arbitration contained two counts: breach of contract and breach of fiduciary duty. Heinig then moved to add a racketeering claim and a claim relating to community liability. The racketeering claim was described in her hearing memorandum as follows:

> The wealth of evidence which has been presented to date in this hearing shows that Mr. Hudman engaged in a concerted scheme, over an extended period of time, to use economic pressure to "squeeze" Heinig ... out of the partnership. In addition, and as testified to by numerous disinterested parties with no axe to grind, the evidence shows that Hudman took a variety of concrete steps to achieve his goal of squeezing ... Heinig out.

Heinig set forth her racketeering claim in paragraphs 25 and 27 of her complaint in the present action:

> 25. Hudman committed a scheme or artifice to defraud for financial gain by, *inter alia:* (1) falsely representing to Mrs. Heinig that he was using separate funds for his investment in the Baseline Plaza partnership; (2) falsely representing to Mrs. Heinig that he had sufficient separate assets to perform as the "money partner"; and (3) by conveying community property assets to his wife in an attempt to keep those assets out of the reach of creditors.

> •    •    •    •    •    •

> 27. For purposes of this claim, George Hudman was acting on behalf of, and to benefit, his marital community; among other things, he was attempting to improperly shield his community assets.

The record thus reveals that Heinig's current claims for fraud and racketeering involve different facts and conduct from those raised before in the arbitration. While the claims in the arbitration relate to George Hudman's attempts to force Heinig out of the partnership, the claims in the present action relate to George Hudman's misrepresentations regarding the source of the money he used in the partnership. Heinig has a final judgment against George Hudman for $165,-

000 based on her claims of breach of fiduciary duty and breach of contract. The fraud and racketeering claims she now raises concern her inability to collect that judgment because of misrepresentations made by Hudman. In fact, Heinig states—and the Hudmans do not dispute—that Heinig did not even discover her current claims until George Hudman's testimony during the arbitration hearing. Although all of these claims arise out of the partnership, they are separate and distinct causes of action. We conclude that res judicata is no bar to the present action.

### III.

■ Heinig alleged that shortly before commencement of the arbitration proceeding George Hudman fraudulently "conveyed his entire interest in a community asset (their home) located in Casa Blanca Estates, Lot 16, Maricopa County" to Cheryl Hudman. Heinig asserted that George Hudman was unable to satisfy the arbitration judgment without resorting to community funds, specifically the Casa Blanca property. Heinig sought an order that the Casa Blanca property and any other property fraudulently conveyed be subject to execution. A.R.S. section 44–1007 provided that an intentionally fraudulent conveyance may be set aside [4]: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." [5]

Cheryl Hudman responds that because the Casa Blanca property was a community asset, Heinig would be required to have a claim against the community in order to execute against the property. Because Heinig's judgment is only against George Hudman's separate property, Cheryl Hudman reasons that Heinig may not set aside the conveyance as fraudulent: Heinig was not a present or future creditor of the community when the property was conveyed.

However, if George and Cheryl Hudman held the property as joint tenants, Heinig need not have been a creditor of the community when the property was conveyed. Married joint tenants hold their respective interests as separate property. *Russo v. Russo*, 80 Ariz. 365, 367, 298 P.2d 174, 175 (1956); *Collier v. Collier*, 73 Ariz. 405, 411, 242 P.2d 537, 541 (1952); *Ferree v. City of Yuma*, 124 Ariz. 225, 227, 603 P.2d 117, 119 (App.1979). As a creditor with a claim on George Hudman's separate property, Heinig would have a fraudulent conveyance claim if George and Cheryl Hudman held the property in joint tenancy at the time of the conveyance.

■ Although the language of the deed may purport to create a joint tenancy, the language is not controlling. Heinig must show that George Hudman accepted the deed to the Casa Blanca property with knowledge of the joint tenancy term. *In re Baldwin's Estate*, 50 Ariz. 265, 274–75, 71 P.2d 791, 795 (1937). Because of the statutory presumption that all property acquired during marriage is community property, property conveyed to a husband and wife is held in joint tenancy only when both spouses knowingly accept that form of title. *Id.*

If the property was held in joint tenancy and George Hudman fraudulently transferred his interest in it to Cheryl Hudman, then Heinig can reach that interest. A conveyance from George Hudman to Cheryl Hudman would impede execution against George Hudman's one-half joint tenancy interest in the Casa Blanca Property. Assuming that Heinig proves that a fraudulent conveyance occurred and that the property was held in joint tenancy, the trial court may set aside the conveyance or may make the property available for execution to satisfy her

---

4. Chapter 44 has subsequently been amended and renumbered. This provision is now found in A.R.S. §§ 44–1004 and 44–1007 (Supp.1991).

5. At the time George Hudman transferred his interest in the property to Cheryl Hudman, Heinig may have been a future creditor with an unmatured claim under the fraudulent conveyance statutes. As such, Heinig would have standing under the statute to petition the superior court to set aside George Hudman's fraudulent conveyance. " '[C]reditor' means a person who has a claim." A.R.S. § 44–1001(3) (Supp. 1991).

judgment pursuant to A.R.S. sections 44–1001 through 44–1010 (Supp.1991).

If Heinig ultimately obtains a judgment against the community, she may of course execute against community property at that time.

The judgment is reversed and this matter is remanded to the superior court for further proceedings in accordance with this opinion.

GERBER, P.J., and JACOBSON, J., concur.