## NORTHWESTERN NATIONAL INSURANCE COMPANY, Plaintiff–Appellant,

v.

## LaDawn SCHUBACH and Dorothy K. Wales, Defendants–Appellees.

### No. 95–3730.

United States Court of Appeals, Seventh Circuit.

Argued May 24, 1996.

Decided Aug. 21, 1996.

John A. Rothstein, Richard C. Ninneman (argued), Quarles & Brady, Milwaukee, WI, for Northwestern Nat. Ins. Co. of Milwaukee, WI.

Daniel W. Hildebrand (argued), DeWitt, Ross & Stevens, Madison, WI, Alex B. Vakula, Jon A. Titus, Titus, Brueckner & Berry, Scottsdale, AZ, for LaDawn Schubach, Dorothy K. Wales.

Before POSNER, Chief Judge, and ROVNER and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

For the third time, this court has before it an appeal arising out of the unsuccessful Arizona limited partnerships backed by Northwestern National Insurance Company (NNIC) during the 1980s. See *Northwestern National Insurance Company v. Maggio*, 976 F.2d 320 (7th Cir.1992); *Northwestern National Insurance Company v. Baltes*, 15 F.3d 660 (7th Cir.1994). See also *Northwest-*

*ern National Insurance Co. v. Donovan,* 916 F.2d 372 (7th Cir.1990). On this round, we must consider the effect of Arizona community property law on the judgment NNIC obtained against certain investors in the partnerships, which we affirmed in *Baltes.* NNIC's problem is simple: its judgment against two of the partners, Stanley D. Schubach and Harold W. Wales, is uncollectible. Schubach and Wales are both married residents of Arizona, a community property state, and they have only community property. Realizing that, NNIC tried to sue the two men's wives in this case, to enable it to reach the community's assets. Although we appreciate the frustration NNIC must feel, having become ensnared in the intricacies of community property law, we conclude that the district court correctly dismissed the action.

Our review of the facts can be brief. In 1989, NNIC sued five investors in a limited partnership for breach of contract. This partnership, back in 1984, had sought additional funds, which it had obtained through some promissory notes. The lender required it to secure those notes with a financial obligation bond from NNIC, and NNIC for its part required the investors in the limited partnership to agree to indemnify it, should it be required to make good on the bond. In time, the enterprise defaulted on the notes, and NNIC sued in the federal court for the Eastern District of Wisconsin, as we described in more detail in *Baltes.* NNIC obtained a judgment against the investors, which we affirmed.

Schubach and Wales were two of the partners against whom the judgment had been entered. Each one had executed a note with a principal amount of $56,571; each had obtained a financial guarantee bond from NNIC for the note; and each had promised to indemnify NNIC in that amount if he defaulted on the note. Neither man's wife signed either the note, the bond application, or the indemnity agreement. After things went sour and NNIC tried to enforce its judgment against Schubach and Wales (while the *Baltes* appeal was pending), both men claimed that all assets they owned were community property with their wives. NNIC initially responded by filing a motion under Fed.R.Civ.P. 60(b) with the district court, asking it to add the wives as defendants to the original action. The district court denied the motion, and NNIC took no separate appeal from that order.

NNIC then filed the present action against LaDawn Schubach and Dorothy K. Wales, the two wives, again in the federal district court for the Eastern District of Wisconsin. It alleged that Messrs. Schubach and Wales had acted as agents for the wives with respect to their Arizona community property in the various transactions concerning the limited partnerships. It sought a declaration from the district court that the wives were jointly liable with their respective husbands for the judgments previously entered against the husbands, or, in the alternative, that the wives were jointly liable with their husbands directly under the notes or indemnity agreements in NNIC's favor. After a trial to the court, the district court ruled against NNIC. It concluded that Arizona law requires a creditor to sue the husband and wife together, in the same lawsuit, if it wishes to collect from the community. Since NNIC had sued them seriatim, it rejected both claims for declaratory judgment that NNIC presented.

Because all parties agree that Arizona law controls this case, we turn immediately to the governing provisions of Arizona community property law, which we find in A.R.S. §§ 25–214 and 25–215. Section 25–214 deals with the management and control of the community property, and § 25–215 elaborates on those rules and adds a provision about actions brought to enforce community obligations. We set forth both statutes, in pertinent part.

§ 25–214. Management and Control.

A. Each spouse has the sole management, control and disposition rights of his or her separate property.

B. The spouses have equal management, control and disposition rights over their community property, and have equal power to bind the community.

C. Either spouse separately may acquire, manage, control or dispose of community property, or bind the community, except

that joinder of both spouses is required in any of the following cases:

1. Any transaction for the acquisition, disposition or encumbrance of an interest in real property other than an unpatented mining claim or a lease of less then one year.

2. Any transaction of guaranty, indemnity or suretyship.

§ 25–215. Liability of community property and separate property for community and separate debts.

*   *   *   *   *   *

D. Except as prohibited in § 25–214, either spouse may contract debts and otherwise act for the benefit of the community. In an action on such a debt or obligation the spouses shall be sued jointly and the debt or obligation shall be satisfied: first, from the community property, and second, from the separate property of the spouse contracting the debt or obligation.

These statutes, taken together, show that Arizona follows two general rules: first, either spouse may incur obligations that bind the community (with the exceptions noted in § 25–214(C), to which we return), and second, notwithstanding the right of each spouse to act as the other's agent in the business world, when it comes to litigation relating to the community property the spouses must be sued jointly. These two rules are not necessarily contradictory. When it comes to ordinary commercial transactions, the right to equal management of the community property would be worth little if each spouse were not entitled to bind the community. Otherwise, in effect, every contract or transaction would *de facto* need both signatures. Litigation is a different matter, for several reasons. First, the non-signing spouse has an interest in making sure that the property that was purportedly obligated was properly characterized as community property. The non-signing spouse may be able to show in some cases that it was the signer's separate property, and thus that the non-signer's interests were not adversely affected by the deal. Second, the non-signing spouse is the one with the incentive to enforce the exceptions found in § 25–214(C) to the general rule.

Requiring joinder in litigation gives the non-signer the opportunity to raise arguments under that provision, even when the property is clearly community. In the end, of course, it matters not at all whether we think the system a sensible one or not; it is our duty to follow Arizona law as authoritatively provided by the legislature and courts of that state. Our observations go only to suggest some of the purposes that may lie behind the Arizona statutes that may be pertinent to this case.

Nothing from the Arizona courts supports anything but a straightforward reading of these statutes. In *Eng v. Stein,* 123 Ariz. 343, 599 P.2d 796 (1979), the Arizona Supreme Court had before it a case in which contractors brought a suit for breach of contract and to enforce a materialman's lien against only the husband, Larry Eng. The trial court awarded damages, attorney's fees, and foreclosure of the lien, but its judgment named both Mr. and Mrs. Eng. On appeal, the Arizona Supreme Court agreed that the trial court had erred when it attempted to bind Mrs. Eng, who had never been named as a party or served with process in the action. The contract that formed the basis of the action was presumably a community obligation, and the court held that "A.R.S. § 25–215 requires that a cause of action based upon such a community obligation be brought against both the husband and wife." 599 P.2d at 798. The judgment for damages was valid against Mr. Eng separately, and the court made it clear that his judgment creditor could reach his separate property to enforce it. The foreclosure of the lien, however, had to be set aside because Mrs. Eng had not been a party.

The parties in *C & J Travel, Inc. v. Shumway,* 161 Ariz. 33, 775 P.2d 1097 (Ct.App. 1989), tried the bifurcated approach that NNIC used here. In that case, C & J Travel and New England Trolley had brought a suit against David Shumway in New Hampshire court for breach of vehicle lease agreements and won a judgment. When they learned that he lacked the assets to satisfy the judgment, they brought an action on the judgment against both David Shumway and his wife Robin Shumway in Arizona court, seek-

ing to reach their community property. The trial court dismissed the complaint, and the Arizona Court of Appeals affirmed. Relying on A.R.S. § 25–215, and the earlier appellate court decision in *Vikse v. Johnson,* 137 Ariz. 528, 672 P.2d 193 (Ct.App.1983), the court held that in order to reach the community property, the creditor should have joined both spouses in the original suit. It rejected the argument that the husband was the "virtual representative" of the wife, on the ground that A.R.S. § 25–215(D) expressly overrides any such doctrine for community property cases. Finally, because the creditors could have brought their suit against both Robin and David in the New Hampshire case, the court found that a new action against both spouses would be barred by res judicata. Such an action would be possible, if at all, only if the final New Hampshire judgment was vacated or set aside.

Recognizing that *Eng* and *Shumway* are quite unfavorable to its position, NNIC argues that those cases should be read in the light of the later appellate court decision in *Heinig v. Hudman,* 177 Ariz. 66, 865 P.2d 110 (Ct.App.1993). In *Heinig,* the husband, George Hudman, entered into a partnership agreement to develop raw land owned by Heinig. Hudman represented, both orally and in writing, that he was a married man dealing with his sole and separate property. Later, when the real estate market took a downturn and the partnership began experiencing financial difficulties, Heinig instituted arbitration proceedings against Hudman under the arbitration clause of the agreement. During the course of the arbitration, she learned that Hudman had misrepresented the source of his funding, and that in fact he had acquired his partnership interest with his community funds. Heinig then tried to join Hudman's wife, Cheryl Hudman, as a party to the arbitration. Her efforts were rebuffed by the arbitrator, who ruled that he had no authority under the agreement to arbitrate claims against Cheryl Hudman. The arbitrator also expressly stated that he did not regard his ruling as a bar to any subsequent action. The arbitration award in Heinig's favor was subsequently confirmed by the Arizona superior court.

Taking the hint, Heinig then sued both Hudmans in state court, seeking declaratory relief that the arbitral judgment against George was enforceable against both parties and raising various fraud and racketeering claims. The superior court granted summary judgment for the Hudmans on all claims, but the appellate court reversed in part. It decided that Heinig's claims against the Hudmans were not barred by res judicata, because Heinig had no opportunity to include Cheryl in the arbitral proceeding and because the arbitrator expressly reserved Heinig's right to maintain the second action. On the other hand, the court rejected Heinig's argument that the judgment against George could simply be converted into a judgment against both Hudmans, because Cheryl Hudman had never had her day in court on the issues. As the court had held in *Shumway,* this court agreed that the existing judgment was enforceable against George's separate property.

In our case, there was no legal impediment against NNIC's bringing its original action against both the husbands and the wives. At oral argument, counsel told us that NNIC chose to sue only the husbands for strategic reasons: it hoped to maximize the chances that its forum selection clause (in favor of Wisconsin, in the contract signed only by the husbands) would be enforced. Never having tested the clause before, it was not sure whether it would be binding on the non-signing wives. This hardly qualifies as the kind of jurisdictional barrier to suing both parties that the Arizona court considered in *Heinig.* Furthermore, there is nothing to indicate that NNIC could not have waived the clause and brought the first suit in the Arizona courts, where it plainly would have been able to reach all parties relevant to this case.

We conclude, therefore, that this case is governed by the general rule of *Eng* and *Shumway.* NNIC's judgment against Messrs. Schubach and Wales is a perfectly good judgment, enforceable against any separate property that they now have or might acquire. It cannot, however, be enforced against their respective wives individually, or against the community property held by each

couple. With respect to the present suit, we refuse the invitation to stretch the requirement to sue spouses "jointly" in A.R.S. § 25–215(D) into a rule that seriatim lawsuits, first against one spouse and then against the other, will suffice to make the community liable in the event the creditor wins twice. Such an approach would lead to substantial legal uncertainties, even if it were possible. What, for example, would be the issue preclusion effect of facts necessarily decided in the suit against the husband, in the later suit against the wife? If preclusion were possible, then the wife would still have lost her day in court, contrary to the express policy of the Arizona statutes and decisions. If preclusion is out of the question, then the possibility of inconsistent results necessarily arises—a possibility particularly unsuitable for a pair of lawsuits trying to reach the single, undivided community estate. Arizona has found a way to avoid these problems by requiring that "the spouses shall be sued jointly" when the community property might be liable. The term "sued jointly" is well recognized in the law; it means at the same time, in the same lawsuit. Arizona has adopted this special rule for lawsuits that seek to reach community property, even though in the ordinary case it follows the general rule that parties to joint obligations may be sued either jointly or separately. See A.R.S. § 44–141.

The district court correctly applied Arizona law and dismissed this lawsuit against LaDawn Shubach and Dorothy Wales. In the end, creditors who deal with debtors or indemnitors from community property states must take care that they have brought the right parties into the litigation. Indeed, they must also take care that they have included the right parties in the initial agreements. See, for example, Ron Kilgard, *Recent Developments in the Law of Guaranties,* Arizona Attorney, April 1995, at 10; John J. Tuchi, *Creditors Take Heed! The Interpretation of Arizona's Community Property Management and Control Statute and Its Effect on Partnership Debts,* 25 Ariz. St. L.J. 695 (1993). If they do not, they will pay the same price that NNIC has here.

The judgment of the district court is AFFIRMED.