NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

KENNEDY JOHNSON GALLAGHER, L.L.C., a New York limited liability company, *Plaintiff/Appellee*,

*v.*

THOMAS N. PAYNE and BARBARA C. PAYNE, husband and wife; and each of them, *Defendants/Appellants.*

No. 1 CA-CV 13-0540

FILED 10-14-2014

---

Appeal from the Superior Court in Maricopa County
No.  CV2011-009147
The Honorable Mark H. Brain, Judge

**AFFIRMED**

---

COUNSEL

Hammerman & Hultgren, P.C., Phoenix
By Jon R. Hultgren and Allan R. Draper
*Counsel for Plaintiff/Appellee*

Thomas N. Payne, Attorney at Law, Paradise Valley
By Thomas N. Payne
*Counsel for Defendants/Appellants*

---

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Kent E. Cattani joined.

---

**K E S S L E R**, Judge:

¶1            This appeal arises out of Kennedy Johnson Gallagher, L.L.C.'s ("KJG") efforts to collect a judgment from Barbara Payne's ("Wife") community property.   The superior court issued findings of fact and conclusions of law holding the community liable for attorneys' fees incurred by Thomas Payne ("Husband").   For the reasons that follow, we affirm.

## BACKGROUND

¶2            Husband and Wife (collectively "the Paynes") have been married for more than fifty-five years.  During the marriage, John Mohnach, a fifty-percent shareholder in Smith West, Inc., invited Husband to purchase the other fifty-percent share of that corporation.  To raise $1.75 million for the purchase, the Paynes obtained a bank loan and pledged their jointly owned residences and land as security.   After the purchase's completion, Husband and Mohnach renamed the corporation Mohnach Payne, Inc. ("MPI").

### I.    The MPI Asset Sale

¶3            MPI, along with Mohnach and Husband in their capacities as shareholders, contracted to sell MPI's accounts receivable, inventory, contracts, equipment, machinery, data, and records to Smith West, L.L.C. pursuant to an asset purchase agreement ("APA").   The APA, which Husband negotiated, states that it is a binding obligation of each shareholder and "enforceable against him."   The APA does not identify Husband as a married man nor does it refer to Wife or their marital community.   In the APA, MPI, Mohnach, and Husband agreed to indemnify jointly and severally Smith West, L.L.C. for any damages arising out of or based upon any breach of a covenant or obligation under the APA.

## II.   The Arbitration

¶4        Smith West, L.L.C. subsequently disputed pre-sale misrepresentations by Husband, Mohnach, and MPI, and demanded arbitration.  In its supplemental arbitration demand, Smith West, L.L.C. asserted fraud and other claims under the APA.

¶5        According to Smith West, L.L.C., Husband and Mohnach "were motivated to . . . portray the Company's financial position more positively than what it was" because that would result "in an increased Purchase Price under the Agreement" from which Husband and Mohnach "would directly and personally benefit."  Smith West, L.L.C. sought about $16 million in principal damages on the basis that Husband and Mohnach had manipulated inventory reserves; masked decreasing earnings; inflated the reported Earnings Before Interest, Taxes, Depreciation and Amortization; and misrepresented the condition of equipment.

¶6        Husband, Mohnach, and MPI retained KJG to represent them "late" in the arbitration and after becoming dissatisfied with their prior counsel.  After a five-day hearing, the arbitrator filed his Partial Final Award No. 3 (Phase 2) finding Husband, Mohnach, and MPI jointly and severally liable in the principal amount of $1,331,035.  This amount indemnified Smith West, L.L.C. for damages related to accounts receivable and equipment conditions and conveyances.  The arbitrator did not find fraud and rejected a number of other claims concerning breach of representations and warranties.

## III.   The Attorneys' Fee Dispute

¶7        Husband disputed KJG's fee invoices and declined to pay KJG.  KJG sued Husband and MPI for breach of contract in New York District Court.  KJG dismissed that complaint after executing a Settlement Agreement and Mutual General Release ("Settlement Agreement") in which Husband agreed to pay a reduced sum of $130,000.  In accordance with the Settlement Agreement, Husband executed an affidavit of confession of judgment.  Wife was not a named party to the Settlement Agreement and Husband testified that he had not intended to obligate their community in signing that document.

¶8        Husband then again refused to pay the amount owed under the Settlement Agreement.  KJG accordingly filed suit against Husband and Wife in Arizona for breach of contract.  The superior court conducted a trial at which Husband, Wife, and Peter Gallagher of KJG testified.  At the hearing's conclusion, the superior court ruled that Husband "was

3

defending or hiring an attorney to defend in part the potential liability against the community." The superior court filed findings of fact and conclusions of law holding that the community had benefitted from KJG's representation.

**¶9** After denying a motion for new trial, the superior court entered a judgment against both Husband and Wife, but provided that Wife's separate property could not satisfy the judgment. This appeal followed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (Supp. 2013).[1]

## DISCUSSION

### I. The Paynes failed to rebut the presumption of community liability for KJG's attorneys' fees.

**¶10** The Paynes challenge the superior court's classification of the attorneys' fee debt as a community liability. We are bound by the superior court's findings of fact unless clearly erroneous, and review legal questions de novo. *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 47, ¶ 9, 156 P.3d 1149, 1152 (App. 2007). "[W]e view the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party." *Inch v. McPherson*, 176 Ariz. 132, 136, 859 P.2d 755, 759 (App. 1992).

**¶11** In general, community property is liable for debts incurred for the benefit of the community. A.R.S. § 25-215(D) (2007) ("[E]ither spouse may contract debts and otherwise act for the benefit of the community."); *see also* A.R.S. § 25-215(C) ("The community property is liable for a spouse's debts incurred outside of this state during the marriage which would have been community debts if incurred in this state."). "A debt incurred during a marriage for the benefit of the marital community is presumed to be a community obligation unless clear and convincing evidence exists to the contrary." *Arab Monetary Fund v. Hashim*, 219 Ariz. 108, 111, ¶ 17, 193 P.3d 802, 805 (App. 2008). If a spouse enters a debt-creating agreement, it does not necessarily follow that the debt is the separate obligation of that spouse. *See Cardinal & Stachel, P.C. v. Curtiss*, 225 Ariz. 381, 384-85, ¶¶ 7-12, 238 P.3d 649, 652-53 (App. 2010) (noting that even attorneys' fees incurred by one spouse in preparation for filing a divorce petition may qualify as a community debt to the extent that the family court will structure the parties' child-custody and property division).

---

[1] We cite to the current versions of statutes when no changes material to this decision have since occurred.

¶12        Our task is to determine whether Wife's community interests were at risk in the arbitration with Smith West, L.L.C. Her interests were at risk if there was a community benefit from the APA and asset sale that was jeopardized in that proceeding.

¶13        Smith West, L.L.C. paid approximately $32 million to buy MPI's assets. Husband testified that MPI had $13 million left from the sale after paying creditors, and he and Mohnach each received $2.5 million. As to the balance, Husband testified that he and Mohnach "left a lot of money in the company." Husband admitted that he and Wife held their shares in MPI as a community asset.

¶14        As a result of Husband's representations and successful negotiation of the APA, the value of the community's MPI shares increased. That benefit was at risk when Smith West, L.L.C. demanded arbitration. A large judgment against MPI could decrease the value of its shares, including the Paynes' community share, even if Wife would not be liable to Smith West, L.L.C. on an indemnification theory. *See* A.R.S. § 25-214(C)(2) (2007) ("Either spouse separately may acquire, manage, control or dispose of community property or bind the community, except that joinder of both spouses is required in . . . [a]ny transaction of guaranty, indemnity or suretyship."). Accordingly, we affirm the superior court and hold that the attorneys' fees owed to KJG constituted a community debt. *See Fitzsimmons v. Jackson*, 51 B.R. 600, 613 (9th Cir. B.A.P. 1985) (holding that although wife was separated from husband at the time of the action, wife was still liable for attorneys' fees when husband engaged law firm to defend condemnation suit against community property). *See generally Cabibi & Cabibi v. Hatheway*, 570 So. 2d 104, 109-10 (La. Ct. App. 1990) (construing analogous La. Civ. Code art. 2346 and holding that attorneys' fees were a community debt even though the wife did not sign the attorney-client contract).

¶15        The Paynes contend that the community was not at risk because neither the Settlement nor the KJG retainer letter mentions Wife, the fact that Husband is married, or the marital community. They also argue Wife did not acquiesce to incurring these obligations. However, a spouse need not acquiesce to incurring the obligations for them to be deemed community debts. *Lorenz-Auxier Fin. Grp., Inc. v. Bidewell*, 160 Ariz. 218, 220, 772 P.2d 41, 43 (App. 1989) ("Debt incurred by one spouse while acting for the benefit of the marital community is a community obligation whether or not the other spouse approves it.").

¶16     The Paynes also argue that there was no community liability because Husband testified that he had never intended to obligate Wife's assets when executing the Settlement Agreement. "The test of whether an obligation is a community debt" is whether the obligation is "intended to benefit the community." *Schlaefer v. Fin. Mgmt. Serv., Inc.*, 196 Ariz. 336, 339, ¶ 10, 996 P.2d 745, 748 (App. 2000) (quoting *Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken*, 179 Ariz. 289, 294, 877 P.2d 1345, 1350 (App. 1994)). The debt need not be incurred with the primary purpose of benefitting the community to qualify as a community obligation. *Cardinal & Satchel, P.C.*, 225 Ariz. at 384, ¶ 10, 238 P.3d at 652. "All that is required is that some benefit was intended for the community," even if no actual pecuniary benefit accrues. *Id.* (citation omitted).

¶17     Husband testified that he hired counsel to defend the arbitration in part to protect MPI. The Paynes' MPI share is a community asset. Husband had also acknowledged to his attorney, Gallagher, "that there would be no defense for his community property if there [was a] determination of fraud." After hearing all the testimony, the superior court found that Husband "was defending or hiring an attorney to defend in part the potential liability against the community." We defer to the superior court's assessment of conflicting testimony, *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347-48, ¶ 13, 972 P.2d 676, 680-81 (App. 1998), and hold that reasonable evidence supported its finding that part of Husband's motivation in hiring KJG was to protect a community benefit.

¶18     In sum, the Paynes failed to rebut the presumption of community liability for the attorneys' fee debt to KJG with clear and convincing evidence. The record reflects that the community's interest in MPI, whose stock value increased with an infusion of funds from the APA, was at risk during the arbitration. KJG's services protected that asset.

## II.     A.R.S. § 25-315(D) does not preclude collection from Wife's community assets.

¶19     The Paynes further contend that the imposition of community liability violates A.R.S. § 25-215(D), which provides in relevant part: "In an action on such a debt or obligation [for the benefit of the community] the spouses shall be sued jointly . . . ." They contend that KGJ's failure to comply with the statute precludes any collection from community property.

¶20     Section 25-215(D) is a procedural statute proscribing the manner of bringing an action on a community debt. *Rackmaster Sys., Inc. v.*

*Maderia*, 219 Ariz. 60, 65, ¶ 22, 193 P.3d 314, 319 (App. 2008). Here, the Arizona lawsuit is the action on the debt between KJG and Husband and Wife under A.R.S. § 25-215(D). KJG complied with A.R.S. § 25-215(D) by joining Husband and Wife in this Arizona lawsuit to recover the $130,000 principal and other amounts due.

### A.     Failure to Join Wife in the Arbitration

**¶21**          Nevertheless, the Paynes contend that the failure to join Wife in the Arbitration was a violation of A.R.S. § 25-215(D). At a minimum, they contend, KJG should have attempted to join Wife. But KJG could not have joined Wife in the arbitration because (1) KJG was not even a party to the arbitration, and (2) the arbitration did not adjudicate the Paynes' obligation to pay attorneys' fees to KJG.

**¶22**          Nor are we persuaded by the Paynes' reliance upon *Heinig v. Hudman*, 177 Ariz. 66, 865 P.2d 110 (App. 1993). In *Heinig*, the court determined that a creditor could bring an independent action to determine community liability for a debt following an arbitration in which (1) the spouse could not be joined as she was not a party to the arbitration agreement, and (2) the issue of community liability was not addressed. 177 Ariz. at 70-71 & n.3, 865 P.2d at 114-15 & n.3. In the independent action, the spouse would be permitted an "opportunity to litigate the existence of liability, the amount of damages, and the nature of the liability as a separate or community obligation." *Id*. at 71, 865 P.2d at 115. *Heinig* supports the result here.

### B.     Failure to Join Wife in the New York Lawsuit

**¶23**          The Paynes alternatively argue that A.R.S. § 25-215(D) prevents KJG's recovery from Wife's share of the community assets because KJG failed to even attempt to join her in the New York suit. Further, they argue that joining Wife at this stage violates her due process rights.

**¶24**          The Paynes have failed to supply us with the full procedural history of the New York case. Thus, we are not equipped to evaluate their argument about the feasibility of joinder. In any event, KJG is not attempting to domesticate and enforce the unfiled affidavit of confession of judgment or any other order here. All KJG has sought is damages stemming from breach of the Settlement Agreement. We decline to reverse

based on KJG's decision not to join Wife as a defendant in the New York suit.[2]

**¶25** To summarize, the key issue is whether Wife's community property is liable for a debt incurred by Husband for a community purpose. We have held that it is. *See Ellsworth v. Ellsworth*, 5 Ariz. App. 89, 92, 423 P.2d 364, 367 ("If the husband acts with the object of benefiting the community . . . the obligations so incurred by him are community in nature, whether or not the wife approved thereof."). The Paynes therefore may not use A.R.S. § 25-215(D) to avoid obligations incurred in New York, a non-community property state. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Greene*, 195 Ariz. 105, 109-10, ¶¶ 16-19, 985 P.2d 590, 594-95 (App. 1999).

### III. Wife received due process.

**¶26** Finally, the Paynes argue that KJG's alleged failure to comply with A.R.S. § 25-215(D) deprived Wife of due process. *See* U.S. Const. amends. V, XIV; Ariz. Const. art. 2, § 4. We review this claim de novo. *Emmett McLoughlin Realty, Inc. v. Pima Cnty.*, 212 Ariz. 351, 355, ¶ 16, 132 P.3d 290, 294 (App. 2006) ("We review constitutional claims de novo.").

**¶27** In *Greene*, this court held that "due process does not necessarily require joining both spouses to obtain a valid judgment against the marital community" in an action on the underlying debt. 195 Ariz. at 108, ¶ 13, 985 P.2d at 593. After determining that the debt was a community obligation, we held that Wife received the necessary notice and opportunity to defend in the ensuing garnishment. *Id.* at 111, ¶ 23, 985 P.2d at 596.

---

[2] Equally unavailing is the Paynes' reliance upon *Northwestern National Insurance Co. v. Schubach*, in which a creditor obtained an uncollectible judgment against two partners, then filed a second suit against their spouses. 93 F.3d 386, 387 (7th Cir. 1996), *called into doubt by Gagan v. Monroe*, 269 F.3d 871, 875 (7th Cir. 2001). Applying Arizona law, the Seventh Circuit held that there was no legal impediment to the plaintiff bringing its original cause against the partners and their wives in Arizona. *Id.* at 389. Further, it refused to expand the joinder provision in A.R.S. § 25-215(D) to accommodate seriatim lawsuits, and found that such a rule could create inconsistent results or issue preclusion for the non-joined spouse. *Id.* at 390. No such problem exists here because KJG is not suing Wife separately in Arizona for breach of the Settlement Agreement.

Likewise, in this case, the superior court accorded Wife due process even though she had not previously been joined in the New York action. *See id.*

**¶28** The Paynes rely upon *Garn v. Garn*, 155 Ariz. 156, 745 P.2d 604 (App. 1987), to argue that KJG's pursuit of Wife's community assets is a violation of due process. That case dealt with exceptions to the rule about each spouse's ability to bind the community. Specifically, *Garn* concerned a husband's effort to settle a dispute over real property and personal property with two other family members. *Id.* at 158-59, 745 P.2d at 606-07. Husband and husband's attorney represented that they had the consent of the wife to settle the dispute and to join her to a pending action, when in fact she had given them no such authority. *Id.* at 158-60, 745 P.2d at 606-608. This court held that A.R.S. §§ 25-214(C) and 33-452 (2014) preclude a spouse from conveying or encumbering real property without the other spouse's consent, and an attorney may not settle a matter without the client's express consent. *Id.* at 160-62, 745 P.2d at 608-10. Therefore, the wife and her marital property had not been properly joined. *Id.* at 159-60, 162, 745 P.2d at 607-08, 610.

**¶29** *Garn* does not control here. Husband had the right to incur the underlying attorneys' fee debt for the benefit of the community. The community nature of that debt did not change after Husband reached a settlement with KJG reducing the amount of liability. KJG's pursuit of that debt against Wife's community property in Arizona is consistent with due process.

## CONCLUSION

**¶30** For these reasons, we affirm the judgment. In addition, we award KJG its attorneys' fees and costs on appeal in accordance with paragraph 16 of the Settlement Agreement. This award is contingent upon KJG's compliance with Arizona Rule of Civil Appellate Procedure 21.



Ruth A. Willingham · Clerk of the Court
FILED: gsh